IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VITTORIO VERRECCHIA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 C 0397 |
| | ) | |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| VILLAGE OF ELMWOOD PARK, VILLAGE OF ELMWOOD PARK POLICE DEPARTMENT, and ROBERT BORMAN, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The Court grants Defendants' motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). [10]. The Court also grants Plaintiff leave to file a First Amended Complaint on or before April 5, 2016 in accordance with this ruling. Defendants must answer or otherwise plead by April 26, 2016. Defendant Village of Elmwood Park Police Department is dismissed as a Defendant from this lawsuit.

## STATEMENT

On December 9, 2015, Plaintiff Vittorio Verrecchia filed a Verified Complaint in the Circuit Court of Cook County, County Department, Chancery Division, Case Number 2015 CH 17858, against Defendants Village of Elmwood Park, Village of Elmwood Park Police Department, and Robert Borman alleging violations of the Fourteenth Amendment's Equal Protection Clause, *see* 42 U.S.C. § 1983, as well as a state law claim for mandamus. On January 12, 2016, Defendants removed the underlying state court action pursuant to 28 U.S.C. §§ 1331, 1441, 1446. Before the Court is Defendants' Rule 12(b)(6) motion to dismiss. For the following reasons, the Court grants Defendants' motion. The Court also grants Plaintiff leave to file a First Amended Complaint on or before April 5, 2016 in accordance with this ruling. *See Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana,* 786 F.3d 510, 519 (7th Cir. 2015) ("a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.").

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be

granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining the sufficiently of a complaint under the plausibility standard, courts "accept the complaint's well-pleaded facts as true and construe the allegations in the light most favorable to the plaintiff." *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014).

## BACKGROUND

Plaintiff resided in the Village of Elmwood Park, Illinois from September 2013 to October 2014 and currently works as a code inspector for the Village. (R. 1-1, Verified Compl. Stmt. Facts ¶¶ 7, 8.) In his capacity as a code inspector, Plaintiff's job duties include regularly attending team meetings, performing routine and special building and home inspections, and performing other inspections to determine whether code violations exist. (*Id*. ¶ 9.)

On July 10, 2015, Plaintiff attended a Chicago Cubs baseball game with two friends, one of whom is a political opponent of the Village's mayor, Angelo Saviano ("Mayor Saviano"). (*Id*. ¶ 10.) During this July 10, 2015 baseball game, Plaintiff took a photograph with his two friends outside of Wrigley Field. (*Id*. ¶ 11.) Thereafter, the photograph was posted on Facebook where others could view it. (*Id*.) Plaintiff alleges that following the baseball game and the posting of the photograph on Facebook, his boss, Defendant Robert Borman, and the Village's Manager, Paul Volpe, repeatedly harassed him. (*Id*. ¶ 12.)

Further, Plaintiff alleges that on July 23, 2015 Mayor Saviano held a political fundraiser to raise campaign funds. (*Id.* ¶ 13.) Rocco Biscaglio ("Biscaglio"), who is Mayor Saviano's campaign manager, worked the front door of the July 23, 2015 event. (*Id*. ¶¶ 14, 17.) When Plaintiff attempted to attend the fundraiser, Biscaglio immediately advised him to leave and stated that he was not welcome at the event. (*Id.* ¶ 18.) Plaintiff alleges that he informed Biscaglio that he had received an invitation and attempted to pay his donation. (*Id*. ¶ 19.) According to Plaintiff, Biscaglio became increasingly angry and aggressive towards Plaintiff, pushed him, screamed at him, and told Plaintiff that he was a rat. (*Id*. ¶ 20.) Plaintiff alleges that Mayor Saviano took notice of what was happening and simply walked away. (*Id*. ¶ 21.) Biscaglio then put his hands on Plaintiff and attempted to push him out of the event.

2

Thereafter, Plaintiff went directly to the Village of Elmwood Park Police Department to file a report about what had transpired at the fundraiser. (*Id.* ¶ 23.) While at the police department, Sergeant Brown took Plaintiff's initial report, at which time Plaintiff asked Sergeant Brown if he could take a few days to decide whether he wanted to press charges and sign a formal complaint against Biscaglio for the alleged assault. (*Id.* ¶ 24.) Sergeant Brown said yes and advised Plaintiff that he could come back to sign a complaint in order to file charges. (*Id.*) Two days later, Plaintiff went back to the police department to pursue his complaint against Biscaglio, but the police department denied his request to sign the complaint. (*Id.* ¶¶ 25, 26.) In fact, at some point, the Chief of Police, Frank Fagiano, denied Plaintiff the opportunity to sign the complaint. (*Id.* ¶ 27.) Also, Plaintiff asserts that Commander Robert Klisz, Mayor Saviano's close friend, took over the processing of the complaint and denied Plaintiff the opportunity to pursue it. (*Id.* ¶ 28.) According to Plaintiff, Commander Klisz told Plaintiff he closed the case after conducting interviews with witnesses who attended the fundraiser. (*Id.*) Plaintiff alleges that to date the police department has not allowed him to sign and process a formal complaint against Biscaglio. (*Id.* ¶ 30.)

Moreover, subsequent to the alleged assault, Plaintiff maintains that he has experienced a change of how he is treated at work. (*Id.* ¶¶ 31-33.) Plaintiff alleges, for example, that the Village passed a new policy removing his vacation days and other benefits granted to Village employees and that this change only impacted Plaintiff's employment benefits. (*Id.* ¶¶ 34, 70.) Plaintiff also asserts that he has a drastically reduced workload, that he is not included in meetings, and that the Village Manager suspended him from writing code citations after Plaintiff issued several citations to a political supporter of Mayor Saviano. (*Id.* ¶¶ 35, 61-63.)

## ANALYSIS

Defendants first argue that the Village of Elmwood Park's Police Department is not a suable entity, namely, that it does not have a separate legal existence from the Village of Elmwood Park. *See Yachnin v. Village of Libertyville,* 803 F. Supp. 2d 844, 847 (N.D. Ill. 2011); *Gray v. City of Chicago,* 159 F. Supp. 2d 1086, 1089 (N.D. Ill. 2001). Plaintiff agrees, and thus the Court grants this aspect of Defendants' motion to dismiss the Village of Elmwood Park Police Department as a Defendant to this lawsuit.

Next, Defendants assert that Plaintiff's claims based on political affiliation are more appropriately brought under the First Amendment – not the Fourteenth Amendment's Equal Protection Clause. *See Bisluk v. Hamer,* 800 F.3d 928, 933 (7th Cir. 2015) ("The First Amendment prohibits discrimination against public employees based on the employees' political association."). The Court agrees, especially because Plaintiff is not claiming that he was classified on the basis of a suspect characteristic, such as race, but that the Village treated him differently and retaliated against him because of his political affiliation or association. *See D.S. v. E. Porter Cnty. Sch. Corp.,* 799 F.3d 793, 799 (7th Cir. 2015) ("The Equal Protection Clause grants to all Americans the 'right to be free from invidious discrimination in statutory classifications and other governmental activity.'") (citation omitted). In regard to Plaintiff's retaliation claim, "the right to be free from retaliation may be vindicated under the First

Amendment or Title VII, but not the equal protection clause." *Boyd v. Illinois State Police,* 384 F.3d 888, 898 (7th Cir. 2004) (collecting cases). The Court therefore grants this aspect of Defendants' motion to dismiss without prejudice.

That being said, even if Plaintiff had based his claims on the First Amendment, he has failed to sufficiently allege his claim against individual Defendant Borman because the allegations in the Verified Complaint concerning Defendant Borman are merely that he harassed and retaliated against Plaintiff after Plaintiff attended the Cubs game and posted the attendant photograph to Facebook. To clarify, "individual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation'" *Minix v. Canarecci,* 597 F.3d 824, 933 (7th Cir. 2010) (citation omitted); *see also Locke v. Haessig,* 788 F.3d 662, 669 (7th Cir. 2015). In short, Plaintiff must allege sufficient facts linking his political affiliation to Defendant Borman's conduct – not just the fact that he went to a Cubs game with one of the Mayor's political opponents, took a photograph with the opponent, and then someone put the photograph of Facebook, after which Biscaglio assaulted him. In other words, Plaintiff has failed to allege sufficient facts to state a plausible claim under the federal pleading standards that Defendant Borman was aware of this photograph and its implications regarding Plaintiff's political affiliation (or any other facts supporting Defendant Borman's knowledge of Plaintiff's political affiliation or association) and then acted on this knowledge by retaliating against Plaintiff. The Court therefore grants Defendants' motion to dismiss Plaintiff's claim against Defendant Borman without prejudice.

In addition, Plaintiff has failed to sufficiently allege a claim against the Village in keeping with *Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). More specifically, to recover against a municipality under *Monell*, Plaintiff must eventually establish that (1) he suffered a deprivation of a constitutional right; (2) as a result of an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that was (3) the cause of his constitutional injury. *See King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014). In addition, Plaintiff must show an official policy or custom that was the direct cause or moving force behind the deprivation of their constitutional rights. *See Pyles v. Fahim,* 771 F.3d 403, 409-10 (7th Cir. 2014). Because Plaintiff has failed to allege any facts regarding a policy, custom, or practice that was the moving force underlying his constitutional deprivation, the Court grants Defendants' motion in this respect – without prejudice.[1]

Further, Plaintiff brings a claim for a writ of mandamus compelling the Village Police Department to accept his signed complaint and conduct a proper investigation into the July 2015 incident involving Biscaglio. Pursuant to Illinois law, a court may use a writ of mandamus to direct a public official or body to perform a ministerial (also known as mandatory) duty. *See Birkett v. Dockery,* 235 Ill. 2d 73, 76, 919 N.E.2d 311, 335 Ill.Dec. 592 (2009). Mandamus is

---

[1] Despite Defendants' argument to the contrary, Plaintiff did address his constitutional claim against the Village by asking the Court for leave to amend his allegations.

"an extraordinary remedy appropriate to enforce as a matter of public right the performance of official duties by a public officer where no exercise of discretion on his part is involved." *Id.* (citation omitted). Put differently, mandamus is an appropriate remedy to compel a public officer's compliance with a mandatory duty. *See Mack Indus., Ltd. v. Village of Dolton,* 30 N.E.3d 518, 526, 391 Ill.Dec. 248 (1st Dist. 2015). An official duty is mandatory when it is "absolute, certain and imperative, involving merely the execution of a set task, and when the law which imposes it, prescribes and defines the time, mode and occasion of its performance with such certainty, that nothing remains for judgment or discretion." *Id.*

In response to Defendants' motion to dismiss, Plaintiff does not explain why the extraordinary remedy of mandamus applies under the circumstances. In fact, Plaintiff fails to mention anything about his request for the remedy of mandamus in his response brief, and thus any such claim is waived. *See Steen v. Myers,* 486 F.3d 1017, 1020-21 (7th Cir. 2007) (absence of discussion in brief amounts to abandonment of claim).[2] As such, the Court grants Defendants' motion to dismiss Plaintiff's mandamus claim with prejudice.

On a final note, the Court grants Defendants' motion to dismiss regarding Plaintiff's claim for punitive damages against the Village because it is well-settled that municipalities are immune from punitive damages for claims brought pursuant to 42 U.S.C. § 1983. *See Minix*, 597 F.3d at 830 (citing *City of Newport v. Fact Concerts,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)).

**Dated:** March 15, 2016

_____
**AMY J. ST. EVE**
**United States District Court Judge**

---

[2] Defendants also contend that Plaintiff has failed to address their arguments about his state law claim for retaliation. It is unclear from Plaintiff's Verified Complaint whether he is bringing a state law retaliation claim in addition to his constitutional retaliation claim. In any event, because Plaintiff has asked the Court for leave to amend his retaliation allegations, Plaintiff may allege a state law claim of retaliation claim in his amended pleadings keeping in mind counsel's Federal Rule of Civil Procedure 11 obligations.