# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| VITTORIO VERRECCHIA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 C 0397 |
| | ) | |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| VILLAGE OF ELMWOOD PARK, | ) | |
| and ROBERT BORMANN, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

The Court grants in part and denies in part Defendants' motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). [19]. Defendants shall answer by 7/20/16. Status hearing set for 9/8/16 is stricken and reset to 7/27/16 at 8:30 a.m.

## STATEMENT

On April 5, 2016, Plaintiff Vittorio Verrecchia filed a three-count First Amended Complaint against Defendants Village of Elmwood Park and Robert Bormann alleging violations of his First Amendment rights. Before the Court is Defendants' Rule 12(b)(6) motion to dismiss. For the following reasons, the Court grants in part and denies in part Defendants' motion. Specifically, the Court grants Defendants' motion as to Count I of the First Amended Complaint, but denies Defendants' motion as to Counts II and III.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded

facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

## BACKGROUND

In his First Amended Complaint, Plaintiff Vittorio Verrecchia alleges that he has worked as a code inspector for Defendant Village of Elmwood Park since June 1, 2015. (R. 18, First Am. Compl. ¶ 7.) Defendant Robert Bormann is the Village's Director of Code Administration and Building Commissioner and is Plaintiff's supervisor. (*Id.* ¶¶ 3, 10, 13.) As a code inspector, Plaintiff was busy most days attending team meetings, conducting routine and special building and home inspections, and performing other inspections regarding code violations. (*Id.* ¶ 8.) Plaintiff affiliated himself with Pasquale Martorana, who was a political opponent of the Village President Angelo Saviano. (*Id.* ¶ 10.) Plaintiff alleges that Village managers, including Bormann, expressed their strong dislike for Pasquale Martorana due to Martorana's attempt to bring about change in the Village. (*Id.* ¶¶ 41, 42.)

On July 10, 2015, Plaintiff attended a Chicago Cubs baseball game with two friends, one of whom was Pasquale Martorana. (*Id.* ¶ 11.) During the game, Plaintiff took a photograph with his two friends outside of Wrigley Field. (*Id.* ¶ 12.) The photograph was subsequently posted on Facebook with the ability to be viewed by others. (*Id.*) Plaintiff alleges that following the posting of the photograph, Bormann, the Village Manager, and other Village employees harassed him with statements such as telling him to pass on threats to his "friend Pasquale." (*Id.* ¶ 13.) According to Plaintiff, the posting of the photograph gave Bormann the knowledge that Plaintiff was affiliated with Pasquale Martorana. (*Id.* ¶ 14.)

Further, Plaintiff alleges that on July 23, 2015, Village President Saviano held a political fundraiser. (*Id.* ¶ 15.) Rocco Biscaglio ("Biscaglio"), who is Saviano's campaign manager, worked the front door of the July 23, 2015 event. (*Id.* ¶¶ 16, 19.) When Plaintiff entered the event, Biscaglio immediately advised him to leave and stated that he was not welcome at the fundraiser. (*Id.* ¶¶ 18, 20.) Plaintiff alleges that he informed Biscaglio that he had received an invitation and then attempted to pay his donation. (*Id.* ¶¶ 17, 21.) According to Plaintiff, Biscaglio became increasingly aggressive and then pushed him. (*Id.* ¶¶ 22, 24.) Further, Plaintiff alleges that Village President Saviano took notice of what was happening and simply walked away. (*Id.* ¶ 23.) After Plaintiff's interaction with Biscaglio, he left the event and went directly to the Village's police department to file a report about Biscaglio's misconduct. (*Id.* ¶ 25.)

While at the police department, a sergeant took Plaintiff's initial report, at which time Plaintiff asked the sergeant if he could take a few days to decide whether he wanted to press charges and sign a formal complaint against Biscaglio for the alleged assault. (*Id.* ¶ 26.) The officer said yes and advised Plaintiff that he could come back in the next 364 days to sign a complaint to file charges (*Id.*) Two days later, Plaintiff went back to the police department to pursue his complaint against Biscaglio, but was denied his request by both the police department and by the Police Department's Chief Frank Fagiano. (*Id.* ¶¶ 27-29.) Commander Robert Klisk, who Plaintiff alleges is Saviano's close personal friend, took over processing his complaint, and he also denied Plaintiff the opportunity to sign and pursue his complaint against Biscaglio. (*Id.* ¶ 30.) To date, the police department has failed to allow Plaintiff to sign and process a formal

complaint against Biscaglio.  (*Id*. ¶ 32.)  Furthermore, Plaintiff asserts that prior to the incident with Biscaglio, it was public knowledge that Plaintiff was affiliated with Village President Saviano's opponent Martorana.  (*Id*. ¶ 34.)

After the alleged assault and posting of the Facebook photograph, Plaintiff maintains that he has experienced a change of how he is treated at work.  (*Id*. ¶ 35.)  Plaintiff alleges, for example, that the Village passed a new policy removing his vacation days and other benefits granted to Village employees and that this change only impacted Plaintiff's employment benefits.  (*Id*. ¶¶ 36-37, 70.)  Plaintiff also asserts that he has a drastically reduced workload, that he is not included in meetings, and that the Village Manager suspended him from writing code citations after Plaintiff issued several citations to a political supporter of Village President Saviano.  (*Id*. ¶¶ 38, 70.)  In addition, Plaintiff alleges that the "custom of harassment towards Pasquale Martorana and his political group continued after the photograph was posted," and that the custom "was extended to include hatred and harassment towards the Plaintiff due to his affiliation after the photograph was posted on Facebook."  (*Id*. ¶ 39.)  Also, Plaintiff contends that Bormann continues to exhibit a stark change in how he treats Plaintiff versus how he treats other employees in Plaintiff's position.  (*Id*. ¶ 43.)  Plaintiff alleges that since learning of Plaintiff's support of Pasquale Martorana, Bormann has abused his role with the Village to harass, demote, and reduce Plaintiff's workload and employment benefits.  (*Id*. ¶ 44.)

## ANALYSIS

## I.     First Amendment Retaliation Claim – Count II

In Count II, Plaintiff alleges a First Amendment retaliation claim against his supervisor Bormann in the context of his public employment with the Village.  More specifically, Plaintiff alleges that Bormann retaliated against him based on his political affiliation with Pasquale Martorana, an opponent of Village President Saviano and other Village employees.  "The First Amendment generally prohibits government officials from dismissing or demoting an employee because of the employee's engagement in constitutionally protected political activity." *Heffernan v. City of Paterson, New Jersey*, 136 S.Ct. 1412, 1416 (2016).  Indeed, it is well-established that the "First Amendment protects political association as well as political expression."  *Buckley v. Valeo,* 424 U.S. 1, 15, 96 S.Ct. 612, 632, 46 L.Ed.2d 659 (1976).  To establish a First Amendment political affiliation claim, a plaintiff must show that: (1) his speech was constitutionally protected; (2) he suffered a deprivation as a result of his protected speech that was sufficiently adverse to deter the exercise of free speech; and (3) his speech was a substantial or motivating factor in the employer's decision.  *See Graber v. Clarke,* 763 F.3d 888, 894-95 (7th Cir. 2014); *Kidwell v. Eisenhauer,* 679 F.3d 957, 964 (7th Cir. 2012).

In his First Amended Complaint, Plaintiff has set forth enough facts to sufficiently allege a plausible First Amendment political affiliation claim against his supervisor Bormann.  *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, Plaintiff alleges that he expressed his political affiliation with Pasquale Martorana when he took a photograph with him at the Cubs game and the photograph was later posted to Facebook.  He further states that once his friendship and affiliation with Martorana

became public knowledge to Village employees, the Village, Bormann, and his co-workers treated him differently. He claims that co-workers called him names, a new policy was enacted removing his vacation days and other benefits granted to other Village employees, and that he received a reduced workload and responsibilities due to Bormann's instruction. According to Plaintiff, he was no longer included in team meetings and was not given an assignment in the field, which was a sudden change from how he was treated prior to his affiliation with Pasquale Martorana. Plaintiff's other allegations raise a reasonable inference that Bormann was aware of his political affiliation, including Village President Saviano knowing and being aware of Plaintiff's affiliation with Martorana, as well as the changes in his work occurring after the photograph with Martorana was posted to Facebook and became public knowledge. Based on Plaintiff's allegations, he has sufficiently alleged his First Amendment political affiliation claim against Bormann under the federal pleading standards. *See Iqbal,* 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). The Court therefore denies this aspect of Defendants' motion to dismiss.

## II.     Monell Claims – Counts I and III

Next, in Counts I and III, Plaintiff alleges that the Village and the Village's Police Department (as an agent of the Village) violated his First Amendment rights based on his political affiliation. As the Court has already explained, because the Village of Elmwood Park's Police Department is not a suable entity, namely, that it does not have a separate legal existence from the Village of Elmwood, Plaintiff's claims against the police department are properly brought against the Village. *See Yachnin v. Village of Libertyville,* 803 F. Supp. 2d 844, 847 (N.D. Ill. 2011); *Gray v. City of Chicago,* 159 F. Supp. 2d 1086, 1089 (N.D. Ill. 2001). Moreover, a "respondeat superior theory of liability may not be pursued against a municipal government entity." *Burritt v. Ditlefsen*, 807 F.3d 239, 251 (7th Cir. 2015).

Instead, because both Counts I and III are against the Village, Plaintiff must establish the Village's liability under the well-established standard set forth in *Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To recover under *Monell*, Plaintiff must show that (1) he suffered a deprivation of a constitutional right; (2) as a result of an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that was (3) the cause of his constitutional injury. *See Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016); *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014). Also, Plaintiff must show the official policy or custom was the direct cause or moving force behind the deprivation of his constitutional rights. *See Dixon*, 819 F.3d at 348; *Pyles v. Fahim,* 771 F.3d 403, 409-10 (7th Cir. 2014).

In Count III, Plaintiff alleges that based on his political affiliation with Pasquale Martorana, who wanted to bring about change in the Village and who was a political opponent of Village President Angelo Saviano, the Village denied Plaintiff his First Amendment rights through a widespread custom or policy of discriminating against and harassing employees who politically oppose Village President Saviano. Specifically, Plaintiff alleges that there was a widespread custom of verbally insulting, advocating against, disagreeing with, and actively working against anything that Pasquale Martorana did. (First Am. Compl. ¶ 9.) He further asserts that this custom of harassment towards Pasquale Martorana and his political group

continued after the Cubs game photograph was posted on Facebook and that the custom was extended to include hatred and harassment towards Plaintiff due to his affiliation with Pasquale Martorana and his political group. (*Id.* ¶ 39.)  In addition, Plaintiff contends that the custom or policy is evidenced by the Village passing a new policy removing his vacation days and other benefits and that this change only impacted Plaintiff's employment benefits, along with Plaintiff's reduced workload and suspension from writing code citations after Plaintiff issued several citations to a political supporter of Village President Saviano. (*Id.* ¶¶ 36-38, 70.)  Under these circumstances, Plaintiff has sufficiently alleged that the Village has a custom or policy that was the moving force behind the Village's deprivation of his First Amendment rights.  *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 526 (7th Cir. 2015) (plaintiff sufficiently alleges a claim under federal pleading standards if he includes "enough details about the subject-matter of the case to present a story that holds together.") (citation omitted).  The Court therefore denies Defendants' motion to dismiss Count III.

Last, in Count I, Plaintiff alleges that based on his political affiliation, the police department denied him the right to process his assault complaint against Biscaglio.  In response, Defendants argue that Plaintiff does not have a constitutional right to have the police investigate and process his complaint.  The Court agrees.  *See Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) (plaintiff did "not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction.").  That being said, the fact that the Village's police department refused to process Plaintiff's complaint against Biscaglio is evidence supporting Plaintiff's theory that the Village has a widespread custom of retaliating against employees who do not support Village President Saviano.  Nevertheless, the Court grants Defendants' motion to dismiss Count I because Count III sufficiently alleges Plaintiff's *Monell* claim against the Village under the federal pleading standards, as directly discussed above.

**Dated:**  July 6, 2016

_____
**AMY J. ST. EVE**
**United States District Court Judge**

5